JOHN W. CHAPLIN, ADMINISTRATOR,

APPELLANT FROM DECREE OF JUDGE OF PROBATE.

Androscoggin.     Opinion, February 7, 1935.

288

*Ralph W. Crockett*, for John W. Chaplin.
*S. Merritt Farnum*, for Trustees and estate of Beneficiaries.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER. HUDSON, JJ.

PATTANGALL, C. J.   Case comes forward on exceptions to a decree of the Supreme Court of Probate, allowing an account of plaintiff's intestate, Andrew M. Chaplin, as a trustee under the will of Mary E. Bradford, in which he and Grace L. Jordan were named co-trustees for Grace L. Jordan, Margaret B. Jordan, Ada F. Jordan and Elizabeth Jordan.

The account was first presented to the Probate Court for Androscoggin County and the following items were disallowed.

| | |
|---|---:|
| Ralph W. Crockett, Legal Services and Disbursements | $529.19 |
| Andrew M. Chaplin, Disbursements:— | |
| Witness Fee, Charles L. Conant | 2.12 |
| Service for subpoena | 1.87 |
| Register of Probate, Appeal papers | 15.00 |
| Clerk of Courts, Rule of Reference | .50 |
| Witness Fee, Charles L. Conant | 1.62 |
| Service of subpoena | 1.95 |
| W. H. Cornforth, Copies for Law Court | 161.00 |
| W. H. Cornforth, Copies for Law Court | 19.00 |
| Clerk of Courts, Attesting copies | 1.90 |

A further charge of $327.05, commission at five per cent on $7,441.07, as compensation for services as trustee was reduced to $5.25.

From the disallowance of the items stated and the reduction of the charge for compensation, appeal was taken to the Superior Court, sitting as the Supreme Court of Probate, resulting in a reversal of the decree below and the allowance of the claim in full, to which finding exceptions were seasonably taken and duly allowed.

The principal issue raised by the exceptions involved the question of good faith on the part of Andrew M. Chaplin in connection with certain litigation which arose because of a difference of opinion between him and his co-trustee concerning the sale of eighty one-fourth shares of stock in Bradford, Conant & Company, held by them under the trust. Mrs. Jordan filed a petition in the Probate Court, asking that she be authorized to sell the stock and re-invest the proceeds; and Mr. Chaplin opposed the granting of the petition. After hearing, the Judge of Probate ordered the sale of the stock. Appeal was taken to the Supreme Court of Probate and there dismissed, the decree below being affirmed with costs. Exceptions brought the case to the Law Court, which finally disposed of it by sustaining the findings below. The entire amount in dispute, excepting the charge for commissions, was incurred in this litigation, the record of which was before the Court in the instant proceedings.

The decree presented here contains a specific finding of Mr. Chaplin's good faith in pursuing the course outlined above, concluding as follows: "I decide as a matter of law that the accountant is aggrieved by the decree of the Judge of Probate made February 26, 1934 as set forth in his Appeal and Reasons of Appeal. This decision in law is based on my finding of fact that Andrew M. Chaplin acted in good faith and that his trusteeship did not cause loss to the estate, but on the contrary a financial gain."

It is settled law in this state that the findings of a Justice of the Supreme Court of Probate in matters of fact are conclusive if there is any evidence to support them. When the law invests him with the power to exercise discretion, that exercise is not reviewable on exceptions. If he finds facts without evidence, or if he exercises discretion without authority, his findings may be challenged by exceptions. *Eacott, Executor*, Appellant, 95 Me., 522,

50 A., 708; *Palmer's Appeal*, 110 Me., 441, 86 A., 919; *Gower, Appellant*, 113 Me., 156, 93 A., 64; *Cotting, Appellant v. Tilton*, 118 Me., 91, 106 A., 113.

The only ground, therefore, on which these exceptions may properly be sustained is that the case is devoid of evidence supporting the decree. While we hesitate to reach that conclusion, we have searched the record in vain to find any such evidence. It appears that all through the litigation upon which the claim is based, the good faith of appellant's intestate was in opinion. As is related in the decree before us, that issue was raised twice in the Probate Court, once in the Supreme Court of Probate prior to the hearing in the instant case, and was argued in the Law Court.

In the findings of fact before us, these previous hearings are referred to and the following conclusion drawn from them.

"On the question of good faith of Andrew M. Chaplin the record shows that Probate Judge Berman said:

" 'Subsequent to this annual meeting Mr. Chaplin, having no active and direct interest with the management of the business of the corporation, sought entirely in good faith to dispose of the control of the corporation.'

"Judge Manser, deciding the case on appeal, said:

" 'I find that Andrew M. Chaplin has not honestly and faithfully exercised his discretion and that he has abused his trust in refusing to assent to the proposed sale.'

"The opinion of the Law Court was: (131 Me., 452)

" 'Neither the question of an abuse of discretion nor the matter of the substitution of judicial discretion was involved. Trustees between whom there was radical diversity of opinion sought instruction by the court.'

"Thus we are faced by the interesting situation that, from the same evidence, Judge Berman believed that Mr. Chaplin acted in good faith; Justice Manser believed that he acted in bad faith; the Law Court believed he acted in good faith; and Judge Lancaster believed he acted in bad faith.

"Where such eminent authorities disagree, I feel constrained to accept the more charitable view, especially as it is the view of no less a body than the Justices of the Law Court."

To no other evidence is specific reference made. Apparently the decree presented here was based on the understanding that Judge Berman and the Law Court had affirmatively determined that Mr. Chaplin acted in good faith in opposing the sale of the stock as proposed by his co-trustee. The quotation from Judge Berman's decree seems to bear out this theory so far as he is concerned. But an examination of the record discloses that his final conclusion was to the contrary, as indicated by the following:

"While it is true that the Will grants the trustees complete discretion in handling of the trust property, and while it is further true that an equity court will not as a rule substitute its own judgment for the discretion of the trustees, yet I can not conclude that the equity powers of this Court must stand idly by and permit the rights of beneficiaries in trust estates to be jeopardized, where, as here, because of personal grievances entirely disassociated from the management of the trust estate, trustees can not agree upon a certain course of conduct. . . ."

So far as the Law Court is concerned, it gave no consideration to the issue of good faith, as the opinion in Chaplin, Appellant, supra, distinctly states.

The correct conclusion from the record of the former hearings is that Judge Berman found that Mr. Chaplin's conduct jeopardized the rights of the beneficiaries and was motivated by personal grievances; that Mr. Justice Manser and Judge Lancaster agreed with him; and that the Law Court approved the result reached by Mr. Justice Manser without discussion of that phase of the case.

We are forced to the conclusion that the court below misapprehended the meaning, force and effect of the evidence upon which it relied.

A study of the record discloses certain simple facts about which there can be no dispute, which absolutely negative the finding that the litigation, in which the expense now sought to be recovering was incurred, resulted in financial gain to the estate. In 1931, Grace L. Jordan received an offer of $13,500 for the Conant stock owned by the trust estate, which she accepted, so far as she

had authority to do so. Mr. Chaplin refused to join in making the sale. On her petition to Probate Court, which Mr. Chaplin opposed, permission was granted to make it. Appeal was entered and the vexatious, expensive and unnecessary litigation to which reference has been made followed. As a result, after long delay, the stock was sold for exactly the amount agreed to by Grace L. Jordan, some $5,475 above the appraisal value. It cannot be said that the litigation benefited the estate.

We do not think it necessary to determine here that Mr. Chaplin acted in bad faith in pursuing the course which he followed. We are rather inclined to the view that his judgment was blinded by a sense of personal grievance and that he failed to realize how ill-advised his action was, and that by it he was jeopardizing the rights of the beneficiaries of the trust which he was appointed to assist in administering. But in that view of the case, it would be unjust to charge the expense of the litigation to the estate and, under all of the circumstances of the case, the Probate Court was justified in denying the charge of commissions other than as allowed by it.

Notwithstanding the respect with which this Court has always regarded decrees emanating from the Supreme Court of Probate and the reluctance to disturb them, which has so frequently and emphatically been stated in our opinions, the case admits no action on our part other than to restore the parties to the position in which they were placed by the decree of the Probate Court.

*Exceptions sustained.*
*Case remanded for*
*further action.*